UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHARLES SMITH, JR.                                                                                         PLAINTIFF

V.                                                                         CIVIL ACTION NO. 3:19-CV-260-DPJ-FKB

AMIRACLE RHODES, LACEDRICK FLETCHER,
AND TYLER SMITH                                                                                         DEFENDANTS

ORDER

This § 1983 case is before the Court on United States Magistrate Judge F. Keith Ball's Report and Recommendation [36].  Plaintiff Charles Smith, a state inmate, claims Correctional Officers Amiracle Rhodes, Lacedrick Fletcher, and Tyler Smith "have brandished their knives at him and threatened to stab and shoot him."  R&R [36] at 1 (referencing the complaint and Smith's testimony at a September 25, 2019 omnibus hearing).  Smith also says Defendant Rhodes "has frequently come into his cell illegally, used profanity against him, and falsified [Rule Violation Reports] against him."  *Id.*

Judge Ball recommended granting Defendants' motion to dismiss [16] based on Smith's failure to exhaust his administrative remedies and his failure to state a claim.  Smith filed an Objection [38], and Defendants declined to file a reply.  The Court adopts the well-reasoned R&R in its entirety.  This Order concentrates on the exhaustion requirement, as it appears to be the focus of Smith's objection.

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997(e), an inmate bringing a civil action about prison conditions must first exhaust his administrative remedies. *Whitley v. Hunt*, 158 F.3d 882 (5th Cir. 1998).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534

U.S. 516, 532 (2002).  This exhaustion requirement is mandatory and non-discretionary. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012).

That said, prisoners are only required to exhaust those administrative remedies that are actually "available" to them.  *Davis v. Hernandez*, 798 F.3d 290, 294 (5th Cir. 2015).

> An administrative remedy may be unavailable if (1) despite what regulations or materials may promise, prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates," (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use" by an ordinary prisoner, or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Brantner v. Freestone Cty. Sheriff's Office*, 776 F. App'x 829, 833 (5th Cir. 2019) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016)) (alteration in *Branter*).

In their motion to dismiss, Defendants say Smith failed to exhaust the administrative remedies available through the Mississippi Department of Corrections' two-step Administrative Remedy Program (ARP).  Initially, the inmate prepares a written grievance, which is screened to confirm that it meets certain criteria.  Defs.' Mem. [17] at 6.  If the grievance complies, it is accepted into the ARP; if not, it is returned to the inmate, who has five days to file a corrected grievance.  *Id.*  At the first step, an accepted grievance triggers a written response by a prison official.  *Id.* at 7.  If an inmate is dissatisfied with that response, he must state why, in writing, and may then proceed to step two.  *Id.*  At step two, a prison official again reviews the grievance and issues a second written response.  *Id.*  Only then, if the inmate remains dissatisfied, may he file a lawsuit.  *Id.*

Here, Smith struggled to get his grievances past the initial screening.  The ARP instructions warn:  "The Administrative Remedy Program cannot accept requests for staff to be disciplined, dictation on how staff may conduct themselves, any type of compensation, or lawsuit request; & if your letter contains any of these requests, it will therefore be rejected."  Compl. [1-

2] at 1 ("RE: HOW TO ENTER THE ARP PROCESS"). In the grievances attached to the Complaint, Smith requested: (1) that staff members be disciplined [1-1]; (2) that certain staff practices "be stopped" [1-3]; (3) that he be awarded $10,000 from multiple prison officers [1-5]; and (4) that "unprofessional acts" by staff members "be prohibited" [1-7].

As Judge Ball pointed out, Smith could have responded to these rejections by filing grievances that complied with the ARP requirements, but he did not. R&R [36] at 2. And because Smith never resubmitted his grievances, "he never actually began the grievance process." *Telford v. King*, No. 3:18-CV-507-DPJ-FKB, 2019 WL 4007847, at *2 (S.D. Miss. Aug. 2, 2019) (finding inmate did not exhaust when initial screening rejected grievance and inmate took no further steps).

In his Objection, Smith claims the ARP process is "backwards" and confusing. Obj. [38] at 3. He argues that if he cannot seek monetary damages or ask that an officer be disciplined, then his only recourse is the court. *Id.* at 4. He believes that "in actuality he has completed the ARP steps, because the only relief he could obtain was through said court." *Id.*

But this argument misses the mark. As Smith himself points out, the grievance consists of facts detailing the "who, what, when, where, [and] how." Obj. [38-1] ("RE: HOW TO ENTER THE ARP PROCESS"); *see id.* [38] at 3 ("The ARP Program consist [sic] of who, what, when, where, and how."). The program does not ask the inmate to specify the relief or remedy sought—only the facts supporting the grievances; it is left to prison officials to fashion an appropriate remedy. Smith's complaints about the ARP system do not suggest that relief is unavailable, as contemplated by *Davis*, 798 F.3d at 294.

Finally, the additional documents Smith attached to his Objection do not change this conclusion. Some submissions [38-1, 38-2] duplicate documents attached to the Complaint.

Other documents appear to relate to more recent grievances, lodged after he filed this civil action.  *See* May 19, 2020 Letter [38-3] at 1 (noting Smith had a previously accepted ARP still under review); Apr. 30, 2020 Grievance [38-3] at 2 (complaining about timing of meal delivery due to his preferences as a Muslim); Mar. 17, 2020 Letter [38-4] at 1 (noting Smith had a previously accepted ARP still under review): Jan. 23, 2020 Grievance [38-4] at 2 (complaining about meal delivery on a day he went "off grounds"); Apr. 18, 2019 Letter [38-5] at 1 (noting Smith had a previously accepted ARP still under review); Apr. 18, 2019 MDOC Grievance Detail [38-5] at 2; Apr. 9, 2019 Grievance [38-5] at 3–4 (complaints about staff conduct when he enters the "clinic area").  And lastly, one set of documents relates to an incident involving use of a chemical agent by staff, which is not part of this lawsuit.  Feb. 2019 Grievance Documents [38-6] at 1–3.  If anything, these documents indicate that Smith does understand how to navigate the ARP process successfully, as many of his grievances were accepted and are under consideration (or awaiting consideration).

In sum, the Court adopts the Report and Recommendation [36] in its entirety.  Defendants' motion to dismiss [16] for failure to exhaust and failure to state a claim is granted; Plaintiff's motion for injunctive relief [12] is denied.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 30th day of July, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE
